Denis K. Rotroff (147-9)
P. O. Box 5003
Coalinga, Ca. 93210




# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Denis K. Rotroff,<br><br>Petitioner,<br><br>vs.<br><br>Stephen Mayberg,<br><br>Respondent, | Case No. CV 08 2971<br><br>Petition For Writ Of Habeas Corpus/<br>Declaration of Facts/ Memorandum of<br>Points & Authorities/ Verification<br>St. Supreme Ct. Habeas # S161813<br>REF: Santa Clara Co. SVP Pet. # 210929<br>Direct Appeal # H028311<br>St. Supreme Ct. No. S142536 |

The petitioner is incarcerated at Coalinga State Hospital, pursuant to the Welfare and Institutions Code § 6600, as a Sexually Violent Predator. The petitioner asserts that his constitutionally protected right to due process as provided under the 5 and 14 amendments, were violated when the state breached the promises made at entry of the 1979 plea. The petitioner has now exhausted his state court remedies, wherein all of the issues presented in the instant petition have been presented to the California State Supreme Court and denied on the merits. California State Supreme Court denied these claims in a order filed on March 15, 2008.

(I)

## **TABLE OF CONTENTS**

Pg. No. ( )

I. ) Table Of Points And Authorities .. .. .. .. .. .. .. .. .. .. .. .. .. .. iii

I. Procedural and Factual History .. .. .. .. .. .. .. .. .. .. .. .. .. (1)

A. The 1979 Ventura Co. Conviction.. .. .. .. .. .. .. .. .. .. .. (1)

B. The 1990 Santa Clara Co. Conviction .. .. .. .. .. .. .. .. .. .. (5)

C. The SVP Commitment.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. (6)

II. MEMORANDUM OF POINTS AND AUTHORITIES

A.) GROUND FOR ISSUANCE OF THE WRIT .. .. .. .. .. .. .. .. .. (11)

    1. THE 1979 PLEA AGREEMENT HAS BEEN BREACHED IN VIOLATION OF THE PETITIONER'S DUE PROCESS RIGHTS AND REQUIRES SPECIFIC PERFORMANCE. [**Santobello v. New York** 404 U.S. 257, at 262. 5th, 6th, 14th **Amendments**.]

    2. BECAUSE THE EXPANSIVE LANGUAGE OF CARTWRIGHT CREATED A REASONABLE EXPECTATION THAT APPELLANT'S NO CONTEST PLEA WOULD NOT GIVE RISE TO ANY ADVERSE CONSEQUENCES OUTSIDE THE CRIMINAL CASE, ALLOWING THE USE OF HIS NO CONTEST PLEA IN THE SVP CASE VIOLATED HIS DUE PROCESS RIGHTS UNDER THE U.S. CONSTITUTION. [**Cartwright v. Bd. of Chiropractic Examiners** (1976) 16 C. 3d 762; & 14th Amendment.]

III. PRAYER FOR RELIEF .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. (16)

IV. PETITIONER'S DECLARATION .. .. .. .. .. .. .. .. .. .. .. .. (17)

## TABLE OF AUTHORITIES

**United States Constitution**
    Fifth & Sixth Amendment ... 10
    Fourteenth Amendment ... 10

**Davis v. Woodford**  April 2006,
    (9th Cir. # 05-55164; DC #CV-02-01186); ... 12, 13

**Landgraf v. U.S.I. film Products**
(1994) 511 U.S. 244, ... 8

**Santobello v. New York**
404 U.S. 257, at 262; ... 4, 9, 12, 13

**United States v. Clark**
(9th Cir.) 218 F. 3d 1092; ... 12

**AIU Insurance Co. V. Superior Court**
(1990) 51 C. 3d 807, 822.(1990) 51 C. 3d 807, 822, ... 13

**Cartwright v. Bd. of Chiropractic Examiners**
(1976) 16 C. 3d 762; ... 7, 8

**People V. Rotroff**
(1982) 138 C.A. 3d 796, at 799-800; ... 1, 2, 3, 4, 11

**People v. Yartz**
(2005) 37 C. 4th 529; ... 7, 8, 9

**California Penal Code**

P.C. § 207(b)); ... 5
P.C. § 1016(3); ... 7, 8, 9, 10
P.C. § 261.5; ... 1, 11
P.C. § 261 (2) (a); ... 11
P.C. § 262 (a)(1); ... 11
P.C. § 261.4; subd(a) and (b); ... 11
P.C. § 288.; ... 11
P.C. §664/288(a); ... 5
Cal. E.C. § 1108; ... 6
**Welfare & Institutions Cod**
§ 6600; ... 6, 11
§ 6600.1(a); ... 11
§ 6600(b); ... 11
§ 6600(g)(2); ... 11

## I. Procedural and Factual History

A. **The 1979 Ventura Co.conviction**:

1.) On July 5, 1979, in the Ventura County Superior Court (i.e., Case No. CR-14386 and CR-14701), the petitioner entered into a conditional plea agreement with the prosecution.[1]/ The prosecution and the court agreed on record that, in exchange for his nolo contendere plea to (P.C. § 261.5) the rape of a 14-year-old girl, the state would afford the following considerations:

a.) The petitioner would be permitted to enter a nolo-contendere plea in the true sense of that term: "I m also informed that I can plea no-contest under the true literal definition of that term...the true sense of that term" (as distinguished from Nolo Contendere as defined at the time under P.C. § 1016 subd.(3) ), and;

b.) "I am also informed that I will be given the opportunity to take a second polygraph examination, and that will be used by the court for sentencing." (Please take judicial notice of People V. Rotroff (1982) 138 C.A. 3d 796, at 799-800.)[1]

The court had previously dismissed Count III, the W. Creamer rape allegation. That dismissal was based in part upon polygraph and voice analysis test results.

2.) Subsequently, the petitioner then "passed" a second polygraph examination pertaining to; a. ) the alleged attempted kidnaping of Kimberly S., b.) the alleged attempted kidnaping of Heidi S., and c.) the use of force/duress related to the Christine H. Rape allegation (i.e., Counts X, XI, and V, respectively.)[2]/

---

[1]) The petition had previously l requested that his counsel, Public Defender Roland Short, obtain the laboratory test results of the semen sample pertaining to Count III, the alleged rape of W. Creamer. Counsel failed or refused to do so. The petitioner then established Propria Persona status and obtained the test results. Those results excluded the petitioner. The petitioner also had an alibi placing him at work on that day and time as the incident, which placed him 500 miles away from the Creamer incident.

[2].)The polygraph examination mentioned above as the 'second polygraph examination', 2 , is actually the third such polygraph test. The actual second examination was just a repeat of the first one,

1

3.) However, after the petitioner had passed this second group of polygraph examinations, (contrary to the statements made to the petitioner by trial counsel Public Defender Loy prior to entry of the plea), Loy then stated; "Oh, those tests won't really change anything. The court is going to sentence you to forced rape of Christine H. anyway." Prior to the entry of the plea, Loy had informed the petitioner: "You don't have to plead guilty, just plead no-contest, and when you pass the polygraph test the court I'm sure will do like they did with the Creamer thing, or sentence under the 'wobbler',"(meaning consensual sex with a minor, P.C. § 261.5, which had previously discussed.) Counsel had stated that if the polygraph test was passed and showed that in so far as the use of force or threats, the petitioner was not deceptive, the offense would be reduced to unlawful intercourse with a minor, and the sentence one year in county jail. The petitioner believed this because the Creamer matter had been entirely dismissed as a result of passing polygraphs on that count. Counsel at the hearings on the motion to withdraw the plea, denied that he had made such a promise.

> [Note: The allegations pertaining to the alleged attempted kidnaping of
> Kristina Luberacki were dismissed as a result of the negotiated plea.]

4.) The petitioner then unsuccessfully attempted to fire counsel Loy, and filed a motion in pro-per to withdraw his previously entered a nolo contendere plea. This motion was based upon the assertion of ineffective assistance of counsel Loy. Several hearing where then held on the motion. The petitioner asserted during these hearings that the plea was not done knowingly and intelligently, and that deception and coercion were used to get the petitioner to enter a plea. The petitioner also asserted that counsel was not prepared for trial,

---

dealing only with the Creamer incident, as was the 1st polygraph examination. The second test was requested by the District Attorney, and it was given by a polygraph examiner chosen by the prosecution. The petitioner, however, passed that examination as well. The post plea examination which was agreed to by the parties as part of the negotiated plea, is simply referred to as the 2nd examination, while it was actually the third such test. The term passed in this context means that the examiner found the responses to be non-deceptive.

2

1  even though the petitioner had been in county jail for nearly three years fighting this case and awaiting trial. Trial counsel had previously filed a motion requesting additional time to prepare for trial. The court, however, denied that motion.

5.) As mentioned above, the court held several hearings on the petitioner's motion to withdraw the plea, i.e., on December 3, and 6, 1980, as well as January 21, 1981. On January 21, 1980, the court issued a ruling on the motion. [The court found that the petitioner was represented by ineffective counsel pertaining to Counts X, and XII. However, now during the SVP evaluations, the state employed evaluators use each of these offenses, as if they are factually true. When in fact any, even cursory examination of the claimed underlying facts would reveal how unbelievable each of these allegations are.]

The prosecution sought to have the court make a finding that the petitioner was represented by effective counsel pertaining to the remaining counts, however, the court steadfastly refused to do so. Subsequently the prosecutor elected not to refile those counts. This decision was no doubt based upon the fact that the petitioner had presented substantial evidence which excluded him from any involvement in those offenses. during his motion to withdraw the plea. (See People v. Rotroff, supra at p. 801) Over the next several months the petitioner made several renewed attempts to withdraw the plea. Each of these attempts failed.

6.) On November 6, the petitioner was sentenced to what was at the time the upper term, Five years on Count V, as a P.C. § 261.3 offense. The court gave no justification for breaching the plea agreement when ignoring the successful polygraph test results.

7.) Subsequently the petitioner filed a direct appeal. (2nd Dist. # CR-39312) Counsel on appeal argued that; a.) It was an abuse of discretion when the court granted the motion to withdraw the plea on only two of the counts, and deny it without reasons, on the remaining counts, and, b.) that the plea agreement was "illusional" and "deceptive." (See **People v. Rotroff**, supra, 138 C.A. 3d 796 )

8.) On December 30, 1982, the court of appeals affirmed the conviction in full. The

3

appellate court found that there was no abuse of discretion when the trial court found ineffective assistance of counsel on some of the counts, and not the remainder. Likewise, the appellate court found that the plea was not illusionary or deceptive. The court of appeals, while affirming the conviction made the following observation:

> "When all of the record is examined, it appears that the defendant's overriding concern is not with the want of effective counsel or even the duration of the sentence, but rather, whether his plea admitting the use of threat or force in the Christina H. rape matches the peaceful image of himself he wishes to project...he seeks to assure everyone that he is not the kind of person who would really use force."

(Ib. att 802)

9.) The court of appeals had no problem with the trial courts lack of reasoning when finding that trial counsel was ineffective pertaining to some of the counts, and yet not ineffective on the other Counts. Neither court offered justification or reasoning as to why they found counsel was found to be effective on some of the counts and ineffective in others. The appellate court merely stated that polygraph results are not to be used as evidence in court. This, apparently is regardless of the fact that a major part of the plea concession was due to the fact that the court agreed to use those results in adjusting the sentence. If the sentencing court had no faith in the reliability of polygraph tests, the court should not have signed on and permitted a plea with that condition included. Here in this case, it clearly appears that the court merely agreed to that condition to pacify (See **People v. Rotroff**, **supra** fn. 3., and **Santobello v. New York**, infra). Furthermore, the court's promise to use the polygraph examinations for sentencing purposes was a major incentive to enter the plea, yet the court had no intentions from the onset to actually sentence pursuant to the polygraph results, even though that was agreed to at the entry of the plea. And, obviously, this is contrary to the information that the petitioner was given at the entry of the plea, otherwise as is clear from the record, the petitioner would never have entered a plea to this count.

4

10.) The petitioner also unsuccessfully sought review on the above two claims in the State Supreme Court. That petition for review was denied on March 10, 1983. The appellate court in the opinion stated that the defendant was "system wise," and/or 'knows how to manipulate the legal system.' The record, however, belies this allegation. Because in fact, this was the petitioner's first felony court proceeding, with only one prior misdemeanor court disposition. The petitioner admitted to the police from the onset what he was guilty of. The petitioner was willing to accept his punishment for his guilt, but was not going to sit back and let Ventura County railroad him, as was certainly the intent. The petitioner sat in a very mean county jail for over three years fighting this case. The record establishes that when the petitioner did escape from county jail, he immediately telephoned jail officials, and the prosecutor, and informed them that if they would promise to provide an effective lawyer, and investigator, he would turn himself in. The petitioner was on escape status for over six months.

Pertaining to most of the offenses for which the petitioner was originally charged, the petitioner (while in pro-se status) was able to establish his innocence. Clearly, even the slightest investigation by the prosecution would have demonstrated this fact, but finding the truth was not the goal of the prosecution. <u>In 1979, the petitioner was exactly the opposite of "system wise" and manipulating the court</u>. The petitioner was, however, in 1979, very, very ignorant and extremely naive in believing, as he did at that time, i.e., that the criminal justice system is anti-political and interested in finding the truth. That view, as it sadly turns out, is patently contrary to reality.

**B. The 1990 Santa Clara Co. Conviction: (Case #131549)**

1.) The petitioner was released on parole of May 6, 1984. After successfully completing parole, the petitioner was rearrested on May 15, 1989, in Santa Clara County, based upon numerous allegations of attempted child molestation (P.C. §664/288(a), and

5

1  kidnaping § 207(b)). However, none of these offenses qualify for an SVP commitment. No
2  evidence was presented during trial that any form of lewd conduct occurred in connection
3  with any of the counts; (i.e., no lewd or lascivious conduct, or language, no touching, nothing
4  beyond what would normally be viewed as normal behavior). In fact there was no evidence
5  presented which indicated that the petitioner had any form of contact with one of the two
6  "victims" alleged by the Santa Clara Co. prosecution.

2.) The prosecution was given (carte blanch) permission to present the testimony of the prior victims during the case-in-chief, and did so with abandon. This trial was had during the pre-E.C. § 1108 era. The record demonstrates very clearly that the petitioner was sentenced to a prison term of 27 years by the Santa Clara Country Courts, based not on anything the petitioner actually did, but what the prosecution claimed to believe the petitioner would do at some future time, should the opportunity present itself.

3.) The prosecution was also permitted to try the case under the theory that it was not necessary to show the intent to rape or molest at the time of the incident, but the intent element could be satisfied if the jury believed that the defendant had the intent to molest or rape at some non-specified future time. The jurors first question during deliberation, specifically asked the court whether it was necessary to find that there was the specific intent to rape or molest at that time and place, or can it be at some future time. The court refused to answer this question, but instead, in a scolding manner instructed the jurors to reread the instructions.

**C. The SVP Commitment:**

1.) The petitioner's prison term expired on May 21, 2005. However, prior to the petitioner's release date he was interviewed by Department of Mental Health SVP evaluators. (Welfare & Institutions Code § 6600 et seq.) The state's evaluators opined that, based upon the petitioner's past history and a very brief interview by one of the evaluators, the petitioner

6

meets the criteria for a commitment under the SVP Act. On October 20, 2004, the Santa Clara County District Attorney filed a petition for commitment under the SVP Act. (Pet. # 210929.) Both evaluators refused to use a tape recorder during the interview. These evaluations are now the subject of federal litigation. (Mot. For Preliminary Injunction being decided at the time of drafting the instant petition. **Rotroff v. Mayberg**, et al E.D.C. (Sac) CV-02319-LKK-KJM)

2.) During the SVP proceedings petitioner's trial counsel Andrea Flint, objected to the use of the 1979 Ventura County conviction. This objection was based upon the fact that the petitioner entered a no-contest plea and based upon the former P.C. § 1016(3). The trial court denied the motion to dismiss the petition based upon that issue. Note: This was prior the California State Supreme Court's holding in **People v. Yartz** (2005) 37 C. 4 529; 2005 th Cal.
LEXIS 13653.

3.) Counsel on appeal raised the following issues in the opening brief(s):

> a.) "Appellant's Commitment Is Predicated On The Unlawful Use Of His 1980 No Contest Plea, Which Should Have Been Excluded" Counsel therein citing former P.C. § 1016(3) and, **Cartwright v. Bd. of Chiropractic Examiners** (1976) 16 C. 3d 762. And -
>
> b.) "The 1982 Amendment To Section 1016, Subd. (3), Cannot Be Retroactively Applied To Appellant's SVP Case"

Counsel on appeal also filed with leave of court, a Supplemental Brief which contained the following federal constitutional claims.:

> c.) "Because The Expansive Language Of Cartwright Created A Reasonable Expectation That Appellant's No Contest Plea Would Not Give Rise To Any Adverse Consequences Outside The Criminal Case, Allowing The Use Of His No Contest Plea In The SVP Case Violated His Due Process Rights Under The

7

U.S. Constitution." (Very Predictively, the Court Of Appeal, 6th Dist. # H028311 affirmed the lower court's decision.)

Appellate Counsel subsequently presented that same claim in a petition for review which was filed in the California State Supreme Court. Counsel argued that; "the expansive language in Cartwright, supra, created a reasonable expectation that any nolo contendere plea enter before the 1982 amendment of P.C. § 1016 would be used exclusively in the criminal case and not in subsequent collateral matters." Counsel argued that this "reasonable expectation was cognizable under the Due Process Clause of the U.S. Constitution's 5th and 14th Amendments." Counsel also asserted that justifiable reliance on case law prevents the retroactive application of a change in the law. (Citing, **Landgraf v. U.S.I. Film Products** (1994) 511 U.S. 244, 269-70 & n.23.)

4.) The California State Supreme Court filed its decision **People v. Yartz**, **supra** on December 5, 2005. The court held that an SVP proceeding is a "special proceeding of a civil nature" and therefore not a 'suit' pursuant to former P.C. § 1016 subd.(3). Thus a nolo contendere plea conviction can be used in a subsequent SVP proceeding.

5.) The California State Supreme Court summarily denied the petition in an order filed on May 17, 2006. (State Supreme Court No. S142536)

## II. MEMORANDUM OF POINTS AND AUTHORITIES

A.) GROUND FOR ISSUANCE OF THE WRIT:

THE 1979 PLEA AGREEMENT HAS BEEN BREACHED
IN VIOLATION OF THE PETITIONER'S DUE PROCESS
RIGHTS, AND REQUIRES SPECIFIC PERFORMANCE.

**Santobello v. New York** 404 U.S. 257, at 262.

With the approval of the prosecutor and the court, the petitioner specifically entered his plea

8

in the "true literal sense, and true literal definition of the term nolo contendere". {It is important to note that this condition of the plea is independent of the former P.C. § 1016(3), and relies instead on common language and usage of the term 'nolo contendere', as understood by a reasonable person. Thus this case clearly distinguishes itself from Yartz.}

The **American Heritage Collage Dictionary** 4 Ed. © 2002: "A plea made by a defendant in a criminal action that is substantially, but not technically and admission of guilt, and subjects the defendant to punishment but permits denial of the alleged facts in other proceedings. Latin: I do not wish to contend. [Emphasis added]

From **Black's Law Dictionary** (1979 West 5th Ed. P. 945) "I will not contest it."Nolo contendere is "a Latin phrase for 'I will not contest it'."

**Merriam Webster Dictionary**: The Literal definition of Nolo Contendere; (1872) "A plea in a criminal prosecution that without admitting guilt, subjects the defendant to a conviction but does not preclude denying the truth of the charges in a collateral proceeding." Therefore, regardless of whether an SVP proceeding is legally referred to as a *civil suit*, a *civil action*, or a *special proceeding of a civil nature*, it is 'outside of,' and/or 'collateral to' the 1979 criminal proceeding, and thus cannot be used for any other purpose. **Not without breaching the plea agreement.**

In 1979, the petitioner was proceeding in propria persona, and knew nothing of P.C. § 1016, and relied on his admittedly limited knowledge the English language, and pled no contest under the true literal definition of that term, and the court and prosecution accepted it under those terms. Now, society and the courts want to change those terms with legal trickery, and the mumbling of legalese.

SVP proceedings have been identified by the state supreme court as not falling under former P.C. § 1016(3), because SVP proceedings are deemed as not civil suits or civil actions, but rather 'special proceedings of a civil nature.' There can be no doubt, however, that SVP proceedings are 'collateral proceedings', and/or 'other proceedings' as defined

9

under the vast majority of English language dictionaries. Therefore, such proceedings are encompassed under the "true literal definition of the term, no contest" and have been so defined, since at least the late 1800's. There can be no doubt that petitioner relied on the common English language usage of these terms when entering his plea "under the true literal definition of the terms." Both the court and the prosecution were very comfortable with that language at the time. NOW THE STATE FINDS IT CONVENIENT AND POLITICALLY EXPEDIENT TO CONSTRUE THAT LANGUAGE AS AN ADMISSION OF GUILT, WHICH DIRECTLY AND UNEQUIVOCALLY, CONFLICTS WITH THE EXPLICIT TERMS OF THE PLEA.

Furthermore, the petitioner was promised that should he successfully pass a polygraph examination regarding, inter alia, the use of force or threats in Count V (the Christine H. incident), that case would be reduced to a wobbler, (i.e., unlawful sexual intercourse with a minor (P.C. § 261.5).) This expectation was based on the manner with which the W. Creamer rape case (Count III.) had previously been dismissed.

> [Note: Unlawful sexual intercourse, § 261.5 is not an SVP qualifying offense. Sexually violent offenses for purposes of Welf. & Insts. Code § 6600 are the following: Para (2) subd (a) of 261; Para (1) of subd (a) of § 262; § 261.4; subd(a) and (b) of § 288. (See 6600.1(a); 6600(b); 6600(g)(2).]

The language used by the petitioner at the entry of the plea was clearly not an admission of guilt: "I am entering the plea because my lawyer informs me that we can not mount an adequate defense, and because I am told I can enter my plea under the true literal definition of that term, no-contest." **People v. Rotroff** 138 C.A. 3d 796. Based upon the state's promise to honor the agreement, the petitioner very reluctantly gave up his right to a jury trial. Subsequently, however, when the petitioner learned from his counsel that regardless of the favorable polygraph results, it was the court's intention to sentence the petitioner to forced rape, (and the upper term). Based upon that information, the petitioner

10

then made numerous attempts to withdraw his plea. With the exception of counts X & XII, these attempts were in vain. The court provided no reasons for granting the motion to withdraw the plea on some of the counts and not the remaining ones. Now the 1979 conditional plea has clearly been breached, because of the state's use of that plea as an admission of guilt in the SVP context, and regardless of the favorable polygraph examination results. Both of which are prohibit under the terms of the plea agreement. The petitioner has therefore been tricked and deceived, into forfeiting his right to a trial by jury. "When a plea rests in any significant degree on a promise or agreement of the prosecution, such promise must be fulfilled." **Santobello v. New York**, 404 U.S. 251, 262. Note that it was important to the petitioner, at the time of entering the plea, that the true literal (not necessarily the legal definition) of the term 'no-contest' be understood as part of the condition for entering the plea. In **Santobello**, Justice Douglas wrote for the majority: "When the plea bargain is not kept by the prosecution, the sentence must be vacated and the state court will decide in light of the circumstances of each case whether due process requires; a.) that there be specific performance of the plea bargain, or b.) the defendant be given the option to go to trial on the original charges." Also in **Santobello**, Justice Marshal wrote; "When a prosecutor breaks the bargain, he undercuts the basis of the waiver of the constitutional right implicit in the plea."

    The petitioner gave up his right to a jury trial because he was informed explicitly by counsel that his plea would not be considered the same as a guilty plea.. Furthermore, the petitioner was informed by counsel that if he successfully passed the polygraph tests, those charges would be dismissed. These were the petitioner's expectations. California should not now be permitted to use a prior conviction wherein; a.) there has been no trial, b.) the petitioner has passed a polygraph test pertaining to the use of force and/or violence, c.) was represented by counsel whom, while the court refused to make a definitive finding pertaining to counsel's effectiveness on this particular count, the court did find same counsel constitutionally ineffective on other connected counts. It is not necessary to be a chicken to

1 | recognize an egg!

2 |     In the **United States v. Clark** (9 Cir. ) 218 F. 3d 1092 "Thus if the terms the of the agreement are disputed, a parties contentions regarding his subjective understanding is not dispositive, rather, any dispute over the terms of the agreement must be determined by objective standards. If the term of the agreement is not clear on its face, we look to the facts of the case to determine what the parties reasonably understood to be the terms of the agreement. If an examination of the extrinsic evidence does not eliminate the ambiguity, in the terms of the plea agreement, the ambiguous terms must be construed in a defendant's favor. [Emphasis Added] "If the terms of the plea agreement are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed at the time of making it, that the promisee understood it." "The mutual intentions to which the court give effect is determined by objective manifestations of the parties' intent, including the words used on the agreement, as well as the extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract, the object, nature and subject matter of the contract, and the subsequent conduct of the parties." **AIU Insurance Co. V Superior Court** (1990) 51 C. 3d 807, 822.

    In re **Davis v. Woodford** 9 th April 27, 2006, (9th Cir. # 05-55164; DC #CV-02-01186-AS (RMC)); A state sentencing court sentenced the petitioner to 25 to life sentence, based in part on 8 prior robberies, therein counting each of the 8 robberies as a strike. However, at the prior entry of the plea on the 8 robberies, the sentencing court agreed to count the robberies as only one prior conviction for the purpose of later recidivist sentencing. Later the current sentencing court ignored the prior agreement, and sentenced the petitioner as if the prior robberies each counted as a strike. The Ninth Circuit reversed: "In 1986, the state expressly agreed to treat the robbery conviction as only one strike for purposes of later recidivist sentencing, so counting that conviction as eight strikes, violated the terms of the petitioner's agreement."

The Woodford court found that California Supreme Court's denial of the petitioner's state habeas petition was based on an unreasonable determination of the facts in the light of the evidence presented in state court, 28 U.S.C. § 2254(d)(2), and involved an unreasonable application of clearly established Supreme Court precedent, i.e., **Santobello v. New York** 404 U.S. 357 (1971), within the meaning of 28 U.S.C. § 2254(d)(1).

### III. PRAYER FOR RELIEF

Since the petitioner has already completed his prison term for this offense, the only relief appropriate is the following:

A.) Order specific performance of the terms of the plea. 1.) The 1979 No-Contest plea may not be used by the state as an admission of guilt, for any purpose outside of the 1979 criminal proceeding; (this includes preclude use for purposes of involuntary civil commit), and 2.) The conduct related to Count V., (the alleged rape of Christine H.) as established by polygraph evidence involved no force or violence, and therefore is not a qualifying offense for purposes of the SVP Act.

### IV. PETITIONER'S VERIFICATION

I, the undersigned declarant, Denis K. Rotroff, do hereby certify and declare that all of the aforementioned in this petitioner is true and correct. I hereby so certify and declare under the laws of the State of California, and the penalty of perjury.

I, further certify pursuant to Rule 14, California Rules of Court, that the word count is 4989, as counted by WordPerfect X3. This does not include the table of authorities or the table of contents.

DATED: _____                    *[signature: Denis K. Rotroff]*

## PROOF OF SERVICE

I the undersigned declarant do hereby certify and declare the following:

I am over 18 years of age, and I am an American citizen. I am not a party to this action. On the below shown date I mailed a true copy of the attached document to the party and address set forth below. I hereby certify under the laws of the state of California and the penalty of perjury.

DATED: June 2, 2008

*[signature]*

Mailed Service Denis K. Rotroff

14



Luis L. Roffell #147-9
P. Box 5003
Delano, CA.
93210

Clerk of Court
U.S. District Court (N.D.C.)
450 Golden Gate Ave.
P.O. Box 36060
San Francisco, CA. 94102